UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **MATCH.COM, L.L.C.,** | § § § | |
| Plaintiff, | § § | |
| v. | § § § | Cause No. _____ |
| **ZOOBUH, INC.,** | § § | |
| Defendant. | § § § § § | |

**PLAINTIFF'S ORIGINAL COMPLAINT
AND REQUEST FOR DECLARATORY RELIEF**

Plaintiff Match.com, L.L.C. ("Plaintiff" or "Match") hereby files this Original Complaint and Request for Declaratory Relief against Defendant ZooBuh, Inc. ("ZooBuh" or "Defendant"), and respectfully states as follows:

**I.
PRELIMINARY STATEMENT**

ZooBuh is a professional plaintiff, engaged in the serial manufacture of litigation under the CAN-SPAM Act, 15 U.S.C. § 7701, et seq. (the "CAN-SPAM Act"), to extract monetary settlements from companies that otherwise would face the substantial transaction costs associated with defending lawsuits. To that end, ZooBuh has programmatically sought, collected, and analyzed hundreds of thousands of potentially actionable emails over the last two years and brought cookie-cutter lawsuits against at least twelve companies in the United States District Court for the District of Utah. ZooBuh and its principals are thus among those professional plaintiffs who seek to "use the CAN-SPAM Act to build a litigation factory for . . .

personal financial benefit." *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1067 (9th Cir. 2009) (Gould, J. concurring).

In furtherance of its continuing scheme, ZooBuh recently sent Match three demand letters and a draft complaint alleging violation of the CAN-SPAM Act. ZooBuh's asserted claims, however, fail to clear a number of threshold hurdles. As a mere provider of email accounts, ZooBuh does not qualify as an "internet access service provider" and has not suffered any "adverse effects" from the alleged statutory violations, and therefore lacks standing to sue under the CAN-SPAM Act. In addition, Match is not an "initiator" under the CAN-SPAM Act as alleged, and, upon information and belief, the emails at issue comply with the statute. ZooBuh's allegations appear to be devoid of merit and its claim of more than $600,000 in damages is wholly unsupported. This is in keeping with ZooBuh's *modus operandi* of threatening and filing lawsuits with almost identical pleadings, not to redress actual harm but to force quick "nuisance" settlements.

Faced with imminent litigation, Match files this action and seeks a judgment declaring its rights and status under the CAN-SPAM Act. Specifically, Match seeks declarations that: (1) ZooBuh lacks standing to bring suit under the CAN-SPAM Act, (2) Match did not initiate or procure the transmission of any of the emails of which ZooBuh complains, and (3) the emails forming the basis of ZooBuh's allegations do not violate the CAN-SPAM Act. In addition, Match seeks recovery of its attorney's fees and costs.

## II.
## PARTIES

1. Plaintiff Match.com, L.L.C. is a Delaware limited liability company with its principal place of business in Dallas, Texas.

2. Defendant ZooBuh, Inc. is a Utah corporation with its principal place of business at 10616 Bermuda, Cedar Hills, Utah 84062. ZooBuh may be served through its registered agent, Franklin Fullmer, at 10616 Bermuda, Cedar Hills, Utah 84062.

### III.
### JURISDICTION AND VENUE

3. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction). Plaintiff seeks declaratory relief under 28 U.S.C. § 2201 based on Defendant's allegations that Plaintiff has violated a federal statute, the CAN-SPAM Act, 15 U.S.C. § 7701, et seq.

4. The Court has personal jurisdiction over Defendant because it does substantial, continuous and systematic business in Texas and concededly has customers in Texas. Defendant has personally availed itself of the privileges of conducting business in Texas, and has therefore subjected itself to the jurisdiction and laws of Texas.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

### IV.
### FACTUAL ALLEGATIONS

**A.   Match Goes to Great Lengths to Ensure Compliance with Federal and State Laws, Including the CAN-SPAM Act.**

6. Match is an online, subscription-based dating service that facilitates dating connections for customers across the world.

7. As is common in its industry, Match engages in advertising campaigns utilizing an online marketplace of third-party publishers and affiliates. In such campaigns, an advertiser provides advertising content to publishers and their respective affiliates. The publishers and affiliates then distribute the advertisements to their audiences via email. The advertiser

compensates the publishers and affiliates based on certain agreed-upon triggering actions by the target consumers, such as when the consumer "clicks" on the advertisement, or visits a designated website, or purchases the advertised product or service. In these marketing campaigns—including those engaged in by Match—all commercial emails are sent to consumers by the publishers and affiliates, not the advertisers.

8. Match has diligently implemented and enforced numerous policies and procedures designed to ensure that these third-party marketing campaigns comply with all federal and state laws governing online advertising activities, including the CAN-SPAM Act. Match's compliance efforts include, but are not limited to (i) working with a small number of carefully-chosen publishers with strong reputations for complying with all applicable laws, (ii) requiring all publishers to enter a contract that strictly regulates the publishers' actions and the conduct of any third parties (i.e., affiliates) authorized to send emails promoting Match, including requiring strict compliance with the CAN-SPAM Act, (iii) using internal and/or third-party technology to monitor emails sent by publishers and implement email suppression lists and unsubscribe actions, (iv) enforcing its contractual rights, including in some cases the termination of offending publishers or affiliates, and (v) actively managing suppression lists of email addresses whose owners have opted out of receiving or unsubscribed from future emails. Match's in-house email marketing team and its legal department work together and devote extensive time, money and resources to overseeing these compliance efforts.

9. As a result of these practices, Match's overall compliance effort, comprised of internal employees and outside compliance-focused companies, rigorously monitors the advertising behavior of its publishing partners. Match has on several occasions terminated its relationships with publishers and affiliates that have violated Match's policies.

B.  **ZooBuh's Business and History as a Serial Spam Plaintiff.**

10.  Upon information and belief, ZooBuh is a small business operated by a husband and wife out of their residence. ZooBuh was incorporated in 2007, and purports to offer email services, blog hosting and chat services to approximately 35,000 customers in all 50 states, including Texas. According to the Utah Secretary of State, the address of ZooBuh's business and its registered agent for service of process is the same as the address of its founder, Alan Fullmer, which ZooBuh also shares with other businesses owned by Fullmer.

11.  As ZooBuh's founder has acknowledged, the company's customer base has been fairly static over the last few years, and the company has had a "lack of organic business growth since 2009." Since then, ZooBuh has attempted to supplement its struggling business and stagnant revenue by becoming a professional spam plaintiff. For example:

- On May 13, 2011, ZooBuh sued Smoke Freely, LLC, Stacked, LLC, Killian Capital Partners, LLC, Then There Were Two, LLC and Ted Davenport in the United States District Court for the District of Utah. ZooBuh alleged that between January 2011 and June 2011 (as of the second amended complaint), the defendants sent at least 17,398 emails to ZooBuh's customers that violated the CAN-SPAM Act.

- On June 7, 2011, ZooBuh sued Better Broadcasting, LLC, Iono Interactive and Envoy Media, Inc. in the United States District Court for the District of Utah. ZooBuh alleged that between January 2011 and November 2011 (as of the first amended complaint), the defendants sent at least 12,883 emails to ZooBuh customers that violated the CAN-SPAM Act.

- On December 28, 2011, ZooBuh sued Smokeless Cigarette, LLC, Cigirex, LLC and AKMG, Inc. in the United States District Court for the District of Utah. ZooBuh alleged that between January 2011 and April 2012 (as of the first amended complaint), the defendants sent at least 21,597 emails to ZooBuh customers that violated the CAN-SPAM Act.

- On January 18, 2012, ZooBuh sent a demand letter to Adknowledge, Inc., alleging that, over a several-month period in 2011, Adknowledge sent ZooBuh customers over 100,000 emails, many of which violated the CAN-SPAM Act. After receiving several demand letters, Adknowledge, Inc. sued ZooBuh and Fullmer in the United States District Court for the Central District of California seeking declaratory relief.

- On April 25, 2012, C1ickbooth.com, LLC received a demand letter from ZooBuh, alleging that Clickbooth sent or caused to be sent approximately 22,489 emails to ZooBuh's mail servers over a several-month period in 2011 and that many of those emails violated the CAN-SPAM Act. Clickbooth then filed suit against ZooBuh in the United States District Court for the Middle District of Florida on May 5, 2012, seeking declaratory relief. ZooBuh responded by filing suit against Clickbooth in the District of Utah the next day.

12.   In each case, ZooBuh has followed the same pattern of sending one or more demand letters that threaten litigation and request exorbitant settlement payments. If ZooBuh is not paid off in response to its threats, it files suit in the District of Utah. ZooBuh utilizes a carbon-copy complaint with virtually identical factual allegations and the same legal claims each time. For instance, each complaint alleges that as a result of receiving the allegedly unlawful emails at issue, ZooBuh "has had to create custom SPAM filtering software, has had to dedicate additional man hours to dealing with SPAM related issues, has received customer complaints, has lost customers, and has experienced server spikes, slowdowns, and crashes inhibiting ZooBuh's ability to fulfill its contractual obligations with its customers." Notably, these allegations conflict with representations made on its website, where ZooBuh claims already to utilize "superior spam filtering." Its website also contains several testimonials and other statements extolling ZooBuh's products and services, including ZooBuh's ability to easily limit email receipt to approved contacts only. Indeed, according to its website, for only $1 a month, ZooBuh can "monitor all incoming and outgoing email at all

times." ZooBuh appears to have quickly settled each case it has brought before having to engage in discovery. ZooBuh was represented in all of these cases by Hill, Johnson & Schmutz, a law firm located in Provo, Utah.

C. **ZooBuh Demands Money from Match and Threatens Litigation for Violation of the CAN-SPAM Act.**

13. Consistent with this pattern of abuse, Match received a demand letter on August 13, 2012, from Hill, Johnson & Schmutz purportedly on behalf of an anonymous "Internet Access Service" provider, alleging that Match sent approximately 6,000 emails in violation of the CAN-SPAM Act, and claiming more than $600,000.00 in damages. On October 15, 2012, Match received a second demand letter from the same firm, repeating the demands and attaching a draft complaint. This draft complaint is essentially identical to the complaints ZooBuh filed against the various defendants listed above. ZooBuh sent a final demand letter on November 2, 2012, repeating its allegations and providing examples of allegedly violative emails. Notably, ZooBuh claims the exact same harm in the October 2012 threat Match received that it claimed and supposedly had to remedy in early 2011. ZooBuh's counsel has also engaged staff to repeatedly call Match to follow up on its demands with the threat of a lawsuit should Match not quickly settle.

14. Prior to August 13, 2012, ZooBuh never contacted Match about any alleged violation of the CAN-SPAM Act. Rather than bringing any allegedly unwanted emails to Match's attention upon learning of them, ZooBuh instead appears to have systemically collected a large volume of allegedly unlawful emails over time, in order to support a large statutory damages calculation before threatening Match with litigation. This is in sharp contrast with the behavior of bona fide businesses or customers who immediately complain about and delete unwanted email. Based on its pattern of bringing litigation to extract settlement payments, it is clear

that ZooBuh is strategically seeking and collecting "evidence" of alleged CAN-SPAM Act violations so that it can financially benefit as a professional litigant, not to remedy any actual harm it has suffered. Indeed, upon information and belief, ZooBuh had email from some or all of its customers forwarded to independent email accounts for its review for potential use in litigation.

15. Further, upon information and belief, the emails at issue do not violate the CAN-SPAM Act. The allegedly unlawful emails provided to Match by ZooBuh appear to be over a year old and in some cases almost two years old. In addition, many of the emails provided apparently were missing content, and most of them apparently do not have functioning links. These and other factors make it very difficult, if not impossible, to assess their compliance with the Act, to determine whether they in fact promoted the Match service, and to determine whether Match in fact authorized or knew of their delivery.

16. Moreover, the "damages" alleged by ZooBuh in the draft complaint and other lawsuits (e.g., network crashes and slowdowns) appear wholly attributable to insufficient bandwidth, equipment and filters – the types of issues that struggling businesses with insufficient capital regularly face. These are the same damages ZooBuh claimed in other lawsuits in early 2011 and apparently already has remedied, as its website states that its product features include "superior spam filtering," 24 x 7 monitoring of "all incoming and outgoing email" and the ability to "receive email from contact list only." The fact that ZooBuh still claims to face identical network issues and challenges after first identifying them almost two years ago (and surely extracting many thousands of dollars in purportedly compensatory settlements since then), while making strong marketing claims to the contrary, amply demonstrates ZooBuh's cynical approach to litigation under the CAN-SPAM Act.

17. As a result of ZooBuh's repeated demands and threats of imminent litigation, Match files this lawsuit and seeks a declaration of its rights and status under the CAN-SPAM Act, pursuant to the Declaratory Judgment Act and Federal Rule of Civil Procedure 57.

## V.
## CLAIMS

**Count 1: Declaratory Judgment That ZooBuh Lacks Standing to Bring Suit under the CAN-SPAM Act.**

18. Match repeats and incorporates by reference the allegations made in paragraphs 1 through 17.

19. There is an actual and justiciable controversy between the parties. ZooBuh has sent three demand letters to Match that threaten immediate litigation based on allegations concerning Match's compliance with the CAN-SPAM Act, sent Match a draft complaint, and made multiple litigation threats to Match by telephone.

20. ZooBuh lacks standing to bring suit under the CAN-SPAM Act because it does not qualify as a provider of Internet access service (an "IAS"). Only IASs have a private right of action under the CAN-SPAM Act. Nowhere on its website does ZooBuh claim to provide or offer Internet service access. ZooBuh appears to provide only a tool that uses infrastructure provided by third-party IASs.

21. Even if ZooBuh qualifies as an IAS, it still lacks standing to bring suit against Match because it has not been adversely affected by any violation of the CAN-SPAM Act by Match.

22. Therefore, an actual and justiciable controversy exists between Match and ZooBuh as to whether (a) ZooBuh qualifies as an IAS under the CAN-SPAM Act and, if so, (b) ZooBuh was "adversely affected" by any violation of the CAN-SPAM Act attributable to Match.

23. A determination whether ZooBuh has standing to bring suit under the CAN-SPAM Act would resolve this controversy.

24. Therefore, Match requests a declaration that ZooBuh lacks standing to bring suit under the CAN-SPAM Act.

**Count 2:  Declaratory Judgment That Match Did Not Initiate or Procure Any of the Emails of Which Defendant Complains.**

25. Match repeats and incorporates by reference the allegations made in paragraphs 1 through 17.

26. There is an actual and justiciable controversy between the parties.  ZooBuh has sent three demand letters to Match that threaten immediate litigation based on allegations concerning Match's compliance with the CAN-SPAM Act, sent Match a draft complaint, and made multiple litigation threats to Match by telephone.

27. Match enters into agreements with certain publishers to email advertising content on Match's behalf, and requires that the publishers strictly comply with all federal and state laws, including the CAN-SPAM Act.

28. Match monitors and enforces compliance with these agreements through numerous practices, policies, and compliance personnel.  The advertising content Match provided to its publishers fully complied with the CAN-SPAM Act.

29. Upon information and belief, third-party publishers and affiliates transmitted the emails that give rise to ZooBuh's allegations.  Match did not initiate or procure the transmission of the emails at issue.

30. In the event that Match's publishing partners sent commercial emails in violation of the CAN-SPAM Act, Match did not know, or intentionally avoid knowing, that any of its publishing partners were violating the CAN-SPAM Act.

31.     Even if ZooBuh has standing to sue under the CAN-SPAM Act, Match did not initiate or procure any of the emails about which ZooBuh complains. Therefore, an actual and justiciable controversy exists between Match and ZooBuh as to whether Match initiated or procured the emails under the CAN-SPAM Act.

32.     A determination whether Match is an initiator or procurer under the CAN-SPAM Act would resolve this controversy.

33.     Therefore, Match requests a declaration that Match did not "initiate" or "procure" the sending of the emails about which ZooBuh complains, as those terms are defined in the CAN-SPAM Act.

**Count 3:    Declaratory Judgment That the Emails Forming the Basis of ZooBuh's Allegations Do Not Violate the CAN-SPAM Act.**

34.     Match repeats and incorporates by reference the allegations made in paragraphs 1 through 17.

35.     There is an actual and justiciable controversy between the parties. ZooBuh has sent three demand letters to Match that threaten immediate litigation based on allegations concerning Match's compliance with the CAN-SPAM Act, sent Match a draft complaint, and made multiple litigation threats to Match by telephone.

36.     Upon information and belief, the emails forming the basis of ZooBuh's allegations comply with the CAN-SPAM Act and specifically do not contain materially false or misleading header information.

37.     Therefore, an actual and justiciable controversy exists between Match and ZooBuh as to whether the emails at issue violate the CAN-SPAM Act. A determination of whether the emails of which ZooBuh complains violate the CAN-SPAM Act would resolve this controversy.

38.     Therefore, Match requests a declaration that the emails forming the basis of ZooBuh's allegations do not contain materially false or misleading header information under Section 7704(a)(1) of, or otherwise violate, the CAN-SPAM Act.

## VI.
## REQUEST FOR RELIEF

WHEREFORE, premises considered, Match respectfully requests that the Court enter judgment in its favor and grant Match the following relief:

A.      Pursuant to 28 U.S.C. § 2201, declarations that: (1) Defendant ZooBuh, Inc. lacks standing to bring suit under the CAN-SPAM Act; (2) Match did not initiate or procure any of the emails of which ZooBuh complains; and (3) the emails forming the basis of ZooBuh's allegations do not violate the CAN-SPAM Act;

B.      Judgment against Defendant for attorneys' fees and court costs pursuant to 15 U.S.C. § 7706; and

C.      Such other and further relief, at law and in equity, to which Plaintiff may be entitled.

Respectfully submitted this 6th day of November, 2012.

      By:    */s/ Joseph R. Callister*
             Bryan J. Wick
             Texas State Bar No. 24003169
             bryan.wick@wickphillips.com
             Joseph R. Callister
             Texas State Bar No. 24059054
             joseph.callister@wickphillips.com

             **WICK PHILLIPS GOULD MARTIN, LLP**
             2100 Ross Avenue, Suite 950
             Dallas, TX 75201
             Phone: (214) 692-6200
             Fax: (214) 692-6255

             **ATTORNEYS FOR PLAINTIFF**